UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**WILLIE FRY**                                                                                                               **PLAINTIFF**

**VS.**                                            **CIVIL ACTION NO. 3:22-cv-00027-MPM-RP**

**CITY OF HERNANDO, MISSISSIPPI**                                        **DEFENDANT**

<u>**ORDER**</u>

This cause comes before the court on the motion of defendant City of Hernando, Mississippi for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Willie Fry has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.

In the instant action, plaintiff asserts claims of race discrimination based on allegations that he, formerly a firefighter for the City of Hernando,[1] was unlawfully passed over for a promotion to the position of Driver in 2018, 2020, and 2021. The Driver openings in question were awarded pursuant to both written and performance testing, and the parties disagree regarding whether plaintiff passed or failed many of the portions of particular tests. The parties also disagree regarding the race of at least one of the successful candidates for promotion to Driver at the Hernando Fire Department, but, as discussed below, the record appears to conclusively demonstrate that defendant's version of the facts is accurate on this point.

---

[1] This court notes that plaintiff was eventually terminated by the City, and he alleges that this firing was the result of unlawful retaliation. However, this alleged retaliation has not been, and will not be, litigated in this lawsuit.

This court notes that, in this case, plaintiff has elected to assert his race discrimination claim under 42 U.S.C. § 1981, which follows the *McDonnell-Douglas* framework. *See*, *e.g.*, *Deffenbaugh–Williams v. Wal–Mart Stores, Inc.*, 156 F.3d 581, 587 (5th Cir. 1998). Under *McDonnell-Douglas*, the threshold question is whether Fry demonstrated a *prima facie* case of discrimination. *See*, *e.g.*, *Morris v. Baton Rouge City Constable's Office*, 761 F. App'x 433, 435-36 (5th Cir. 2019). To do so, he must establish four factors: (1) he was not promoted; (2) he was qualified for the position he sought; (3) he fell within a protected class at the time of the failure to promote; and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race. *Autry v. Fort Bend Indep. Sch. Dist.,* 704 F.3d 344, 347 (5th Cir. 2013). If that is accomplished, the burden shifts to the City to articulate nondiscriminatory justifications for the employment action. *Id*. After the nondiscriminatory justifications are set forth, the burden shifts back to Fry to show pretext, i.e. that the proffered reasons are false. *Id*. To show pretext on summary judgment, "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quotation omitted). "To raise an inference of discrimination, the plaintiff may compare h[er] treatment to that of nearly identical, similarly situated individuals." *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).

In considering the summary judgment issues in this case, this court begins with a May 4, 2023 order by Magistrate Judge Percy, denying plaintiff's request for an extension of the

discovery period after it had already expired. In issuing this ruling, which plaintiff did not appeal, Judge Percy wrote that:

> Plaintiff offers no explanation either for his inability to meet the discovery deadline or for his failure to request an extension until after the deadline had passed. It is apparent from the docket that Plaintiff has not propounded any discovery requests or noticed any depositions since the appearance of Mr. Shah. There appears to be no reason – and certainly none offered – as to why the discovery deadline could not reasonably be met despite the diligence of the party needing the extension, or why a request for additional time could not have been made before the deadline.

[Docket entry 53 at 3].

As discussed below, this court concludes that this is a case in which plaintiff's proof (particularly with regard to his 2018 non-promotion) is lacking regarding a number of important issues, most notably regarding the crucial issue of whether the City's decision not to promote him to the position of Driver was motivated by his African-American race. In so stating, this court emphasizes that, while plaintiff devotes much of his quite short briefing to arguments that there were irregularities and/or errors in the City's Driver selection process, § 1981 does not provide a remedy for every instance in which an employee receives a "raw deal" in the job selection process. Rather, § 1981 claims require proof that any such employment decisions were motivated by the candidate's *race*, and yet plaintiff provides very little discussion of this issue in his briefing.

In opposing summary judgment, plaintiff offers this court no direct evidence that any of the relevant decisionmakers were motivated by racial animus in making promotion decisions, instead arguing that, since the successful candidates were white, discrimination in the process may be inferred. Given that plaintiff has chosen to go down this circumstantial path, it is crucial that he support his arguments in this regard with reliable summary judgment evidence. Unfortunately, plaintiff has seen fit to respond to defendant's thorough summary judgment

3

motion with a five-page brief which is buttressed not by reliable summary judgment evidence, but, rather, by his own self-serving affidavit.

    This court notes that, while nothing in the Federal Rules of Civil Procedure prohibits a plaintiff from using his own affidavit as summary judgment evidence, it seems highly questionable for a plaintiff who failed to use the discovery tools which were available to him to instead seek to prove the same sort of facts which could and should have been developed in discovery through bare assertions in his affidavit. This court concludes that, in this case, plaintiff's already problematic use of his own affidavit crosses the line into non-competent summary judgment evidence through the manner in which his assertions of fact are repeatedly contradicted by known facts in the record. This is perhaps most problematic as it relates to plaintiff's assertion that:

> In 2018, Daniel Barnett was promoted. He did not pass the pump test and was promoted over Edward Stewart. Edward Stewart became very upset about the situation because Daniel had failed the pump test and he had passed it.

[Affidavit at 1].

    Stewart, like plaintiff, is an African-American, and Fry's assertion that both he and his black co-worker were unjustly passed over for promotion is clearly intended to serve as circumstantial proof that the promotion process was tainted by racial discrimination. There is one crucial problem with plaintiff's argument in this regard, however: it based upon a factual premise which is simply not true. In support of its summary judgment motion, defendant has submitted the actual minutes of an October 2, 2018 meeting of the Hernando Board of Alderman in which it is clearly stated that the Board unanimously voted to promote Stewart "to the rank of driver/paramedic for Fire/FMS." During plaintiff's deposition, counsel for defendant brought

4

this fact to his attention, and at no point during that questioning did plaintiff dispute that Stewart had, in fact, been promoted in 2018. Specifically, plaintiff testified that:

> Q. Do you remember who was promoted in 2018?
> A. No, ma'am. I think it was Steve. I think it was Steve. Because I know when I got there, Steve was a firefighter. Now he's a driver. I think Steve.
> Q. My records show that it was Edwin Stewart.
> A. They promoted Edwin Stewart in 2018.
> Q. Uh-huh.
> A. Okay.
> Q. And Edwin Stewart, what is his race?
> A. He's black.
> Q. Okay. And he was promoted to driver and then later on he was promoted to lieutenant, correct?
> A. Yes.
> Q. Okay. And then he is no longer with the fire department because he retired, right?
> A. Yes, ma'am.
> Q. Okay. All right. Do you know who made the ultimate decision on who received the promotion in 2018?
> A. Chief Jones.
> Q. Chief Jones, but he had to take it to the board, right?
> A. I guess.
> Q. Okay. So you don't know if the board voted on it or --
> A. No, I don't know.

[Depo. at 63-64].

It is thus apparent that, in his deposition, plaintiff completely acquiesced in counsel for defendant's assertion – which seems indisputable in light of the Board minutes – that, far from being passed over for the Driver position in 2018, Stewart actually received that promotion. At no point in plaintiff's self-serving affidavit does he explain why he now believes himself in a position to question the seemingly conclusive minutes of the Board meeting when he admitted in his deposition that he had no knowledge regarding that vote. Moreover, this court must wonder whether plaintiff's assertion in his affidavit that "Edward Stewart became very upset about the situation because Daniel had failed the pump test and he had passed it" is a complete fabrication, since it is very much unclear why Stewart would have been upset over a promotion which he

5

actually received.² It strikes this court that, if plaintiff actually had recollection of Stewart complaining about not having been promoted, then this is something he could and should have raised at his deposition in response to counsel for defendant's assertion that Stewart had, in fact, been promoted. In any event, this is clearly the sort of matter regarding which plaintiff should have obtained an affidavit from Stewart himself, rather than providing highly suspect information based on alleged hearsay in his own affidavit.

In its reply brief, defendant notes a number of other instances in which plaintiff offers assertions in his self-serving affidavit which are contradicted by his own deposition testimony or by other parts of the record, as follows:

> Fry states that, in 2018, he passed all parts of his promotion test and was told that highest results were the highest in the history of the fire department. Doc. No. 58. He later states that Mark Brown told him that he passed the pump test and that he completed all portions of the promotion test including the interview. Id. Contrary to these assertions, he testified that (1) he was not told he passed, he only believed he had because he thought that he did good, (2) that he did not go to the interview in 2018, and (3) that he was told that he made the highest score on the street portion only, and (4) he was not informed of that fact until 2020. See Doc. No. 54-13 at pp.61-63; Fry Depo. Tr. at pp.56-59, Ex. Q.
>
> Fry claims in his affidavit that he was never advised that the Driver Operation Certification was being waived.2 Doc. No. 58. But he undeniably signed the notices in both 2020 and 2021, which note only three requirements to apply for the promotion: a driver's license, State minimum certification, and one year of employment. See Doc. Nos. 54-2, 54-10, 54-13 at pp.43, 65, & 90.
>
> Fry claims in his affidavit that he never had a write up. Doc. No. 58. In fact, he has had several write-ups during his employment for arriving late and failing to clock in or out, which he admitted to at his deposition. Fry Depo. Tr. at pp.108-110, Ex. Q.

[Defendant's brief at 3].

---

² This court notes that plaintiff did not even get Stewart's name right in his affidavit, referring to him as "Edward Stewart" or, at times, "Edward Steward" when, judging by the Board minutes, his name is actually "Edwin Stewart."

In light of the foregoing, this court agrees with defendant that the numerous deficiencies in plaintiff's self-serving affidavit are sufficient to bring it within the scope of the "sham affidavit" doctrine. "Under the sham-affidavit doctrine, the court will 'not allow a party to defeat a motion for summary judgment by using an affidavit that impeaches, without explanation, sworn testimony. This prevents a nonmoving party from 'manufactur[ing] a dispute of fact merely to defeat a motion for summary judgment." *Bell v. FEUER Powertrain North Am., Inc.*, 2022 WL 14812685, *2 (N.D. Miss. Oct. 25, 2022) (quoted cases omitted). In the court's view, the inherently questionable nature of self-serving affidavits means that a plaintiff must take great care in preparing an affidavit if he wishes for it to be considered competent summary judgment evidence by a court. Moreover, in cases where crucial portions of such affidavits are exposed by the other side as containing false information, it seems quite improper for a court to give the affiant the benefit of the doubt that he might be telling the truth in other parts of his affidavit. This court further notes that, in his briefing, plaintiff does not even attempt to rebut defendant's arguments that his claims based upon his 2018 non-promotion are barred by the statute of limitations, and it thus seems clear that his claims based on this particular non-promotion are due to be dismissed.

As noted previously, plaintiff also asserts claims based upon his non-promotion in 2020 and 2021, and, given his sham affidavit and his failure to adequately participate in discovery, this court was also inclined to grant defendant's summary judgment motion as to those claims. In preparing to do so, however, this court was unable to resolve its concerns regarding one particular piece of evidence which plaintiff does raise, relating to his 2020 non-promotion. In his limited briefing, plaintiff places primary emphasis on pointing out unexplained markings and corrections on written testing performed by his white competitors in 2020, and he offers this as

7

proof that the tests were altered for their benefit. [Brief at 3-4]. In responding to these allegations, defendant writes that:

> [Plaintiff] bases this speculation on circles beside some of Crawford's and Rice's responses and scribbles through the number missed. But Fry admitted that he has no evidence that any other individual was allowed to correct responses, that he did not see Crawford or Rice correct responses, and that it was not even known who graded any of the individuals' tests. *See* Fry Depo. Tr. at pp.76-79, Ex. Q. He cannot say if the corrections were due to a grading error or something else. *Id.* Instead, he admitted that he was just guessing. *Id.* Speculation as to what happened cannot defeat summary judgment.

[Reply brief at 77].

This court agrees with defendant's arguments to a certain point, and it does seem clear that plaintiff would have been well advised to make greater efforts in discovery to get to the bottom of this matter. In considering defendant's summary judgment motion, however, this court is given pause by the fact that, given that the tests in question were administered and graded by the City, it seems clear that it is in a much better position than plaintiff to offer some explanation regarding the meaning of the markings and corrections which are plainly visible on certain white candidates' exams. Instead, defendant simply notes that plaintiff's briefing leaves a number of unanswered questions in this regard, but, once again, it seems clear that the City is in a much better position to provide these answers than plaintiff. Moreover, this court notes that, in its briefing, the City itself describes the markings on Crawford and Rice's tests as "corrections," even though it seems clear that plaintiff was not similarly given an opportunity to correct his erroneous responses. In its briefing, the City relies upon the fact that plaintiff performed poorly in his 2020 testing in explaining the failure to promote him to Driver, and, that being the case, any proof that the mistakes of white candidates were corrected (by whomever) while plaintiff's were not would clearly tend to raise fact issues regarding whether this reason for not promoting plaintiff is merely pretextual under the *McDonnell Douglas* framework.

This court notes that, in its reply brief, defendant observes that the proof of corrections "would only be relevant to the 2020 test," and this appears to be correct. In the event that this court concludes that genuine fact issues exist with regard to the 2020 claim, however, it will likely follow its general practice and wait until after the presentation of the evidence at trial to decide whether plaintiff should be able to assert claims arising out of his 2021 non-promotion. Judicial economy considerations support this approach since, if a trial will be required regardless, then it makes sense for this court to make a final ruling on the 2021 claim when it has all possible evidence at its disposal. This court frankly believes that it may be to plaintiff's advantage to withdraw the 2021 claim, since it seems weaker than the 2020 claim, and, in the event that he is successful on his 2020 claim at trial, then this would seemingly render the 2021 claim moot. In so stating, this court observes that, if plaintiff can obtain a jury verdict on his 2020 claim, then there would be no apparent need for him to prevail on his 2021 claim, since he would already have proven a right to occupy the Driver position by then and to obtain damages for his non-promotion.

In light of the foregoing, this court concludes that it should withhold judgment at this juncture on whether plaintiff's claims arising out of his 2020 and 2021 non-promotions should be dismissed, until both sides are allowed to conduct a brief period of additional discovery, which will be limited to the testing issue referenced above. This will give both sides an opportunity to provide an explanation for the corrections on certain white candidates' tests, and, they may cite any helpful evidence which they discover on this issue in briefing any renewed summary judgment motion filed by the City. This court also suggests that the parties consider settling this matter, particularly since, in light of the dismissal of plaintiff's claims arising out of his 2018 non-promotion, only a limited amount of damages are at stake in this matter. Given these limited

potential damages, it is far from clear to this court that it would be worth it to the parties to spend a great deal of additional time and expense in litigating this matter, and it seems wise that they instead consider resolving it amicably.

In light of the foregoing, it is ordered that defendant's motion for summary judgment is granted with regard to plaintiff's claims arising out of his 2018 non-promotion, but it is dismissed without prejudice with regard to his remaining claims. The court requests that the Magistrate Judge set a brief period of discovery limited to the testing issue referenced above, and the trial presently set for December will be continued until a date to be determined later.

This, the 5th day of September, 2023.

/s/ Michael P. Mills
U.S. DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI