UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

WILLIE FRY                                                                                                        PLAINTIFF

VS.                                              CIVIL ACTION NO. 3:22-cv-00027-MPM-RP

CITY OF HERNANDO, MISSISSIPPI                                        DEFENDANT

**ORDER**

      This cause comes before the court on defendant City of Hernando's second motion for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Willie Fry has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.

      This race discrimination case presents what appears, unfortunately, to be a growing trend, namely that this court "throws a plaintiff a lifeline" by giving him an additional opportunity to properly prosecute his case, and yet he fails to use it. *See, e.g. Love v. Lee Indus., Inc.*, 2023 WL 9051297, at *3 (N.D. Miss. Dec. 29, 2023)(dismissing case for repeated failures to properly prosecute it). In considering defendant's first summary judgment motion in this case, this court noted, in a September 5, 2023 order, that Magistrate Judge Percy found that plaintiff had inexplicably failed to participate in discovery. *See Fry v. City of Hernando, Mississippi*, 2023 WL 5729222, at *2 (N.D. Miss. Sept. 5, 2023). This failure left plaintiff unable to substantively respond to defendant's summary judgment motion, except by using his own self-serving affidavit which, this court found, was flatly contradicted, in important respects, by known facts in the record.

1

Plaintiff asserted in his affidavit, for example, that another black employee, Edwin Stewart, had complained to him about being passed over for a promotion, and he used this assertion to buttress his contention that defendant was biased against African-American firefighters when it came to making promotions. *Fry*, 2023 WL 5729222, at *2-3. In response, however, the City noted that the official records of its Board of Aldermen meetings conclusively established that Stewart had actually *received* the promotion in question, a fact which plaintiff did not deny in his deposition. *Id.* at 3. Based on this and other contradictions between the known record and plaintiff's affidavit, this court concluded that this case was a proper one for the application of the so-called "sham affidavit" doctrine. *Id.* at 4. This court noted that under this doctrine, "the court will 'not allow a party to defeat a motion for summary judgment by using an affidavit that impeaches, without explanation, sworn testimony." *Id.*, citing *Bell v. FEUER Powertrain North Am., Inc.,* 2022 WL 14812685, *2 (N.D. Miss. Oct. 25, 2022).

Plaintiff's sham affidavit gave rise to concerns in this court's mind that he had not merely been delinquent in prosecuting his claims, but that he had been affirmatively untruthful in attempting to buttress them. This court notes that, in his complaint, plaintiff asserted that he had been unlawfully passed over for a promotion to the position of Driver on three separate occasions: in 2018, 2020, and 2021. This court wrote in its September order that, based on plaintiff's acts of omission and commission in prosecuting and briefing this case, it was initially inclined to grant defendant's summary judgment motion as to all these claims. *Id.* at 4. This court explained, however, that with regard to the latter two promotion decisions, it was concerned about markings on certain white employees' test results, which at least raised the possibility that they had been altered to favor them. *Id.*

2

In light of these concerns, this court decided to grant plaintiff one final opportunity to conduct discovery and develop actual proof in support of his testing allegations, even though this is clearly something he could and should have done during the regular discovery period in this case. *Id.* In nevertheless deciding to throw plaintiff a lifeline in this regard, this court wrote that:

> In light of the foregoing, this court concludes that it should withhold judgment at this juncture on whether plaintiff's claims arising out of his 2020 and 2021 non-promotions should be dismissed, until both sides are allowed to conduct a brief period of additional discovery, which will be limited to the testing issue referenced above. This will give both sides an opportunity to provide an explanation for the corrections on certain white candidates' tests, and, they may cite any helpful evidence which they discover on this issue in briefing any renewed summary judgment motion filed by the City.

*Id*. at *5. This court thus advised plaintiff that he should use this second chance to conduct discovery and then cite the results of that discovery in renewed summary judgment briefing. *Id.* Unfortunately, this is an opportunity which plaintiff chose not to take.

In its renewed summary judgment brief, defendant asserts that plaintiff "again failed to do any discovery" during the supplemental discovery period, [brief at 1] an assertion which he does not deny in his response. Moreover, like the sequel to a bad movie, plaintiff's renewed summary judgment briefing includes the same defects which were present in his first, such as his repeated habit of simply "saying things" of a factual nature without providing any record citations to back them up. For example, plaintiff asserts in his brief that:

> However, a total of four white (non-protected class) males were promoted to the Driver position. These individuals had significantly less experience and fewer qualifications/credentials than Plaintiff. Defendant City alleges that these white employees were promoted because they passed the tests and had the certifications for the promotion. This allegation is erroneous. The white employees test answers and scores were wrongfully and fraudulently changed so that is appeared that the white employees passed. Ultimately, these employees did not pass. Additionally, one white employee did not have the certification required to be promoted to the Driver position. The certification was obtained after he was recommended for promotion. As illustrated above, racial discrimination is clear.

[Brief at 6]. There are no record citations offered in support of any of these assertions.

This court is well aware that plaintiff *alleges* that the tests of white employees were wrongfully altered, but the entire point of the supplemental discovery period was to give him a chance to develop actual *proof* in support of his theory that the test alterations are evidence of racial discrimination. This court anticipated, for example, that plaintiff would depose the county employees responsible for conducting and grading the tests in question, so that they could be given an opportunity to explain the markings. Deposing the white employees whose tests were allegedly altered also struck this court as a logical step. In reality, plaintiff did none of these things, which, in light of his prior conduct in this case, fully justifies a dismissal of this action for failure to prosecute and for failure to adequately respond to the summary judgment motion. Indeed, the law is clear that, "[w]here the opposing party bears the burden of proof at trial, the moving party need not submit evidentiary documents to properly support its motion but need only point out the absence of evidence supporting the essential elements of the opposing party's case." *Ledet v. Fleetwood Enterprises, Inc*., 245 F.3d 791 (5th Cir. 2000).

In its September order, this court granted *both* sides an opportunity to submit new evidence which would improve its understanding of the testing issue, and it notes that, unlike plaintiff, defendant utilized its opportunity to do so. In particular, the City has submitted four sworn declarations from individuals who either took or graded the 2020 tests, and, in its brief, it describes their sworn statements as follows:

> After the one-hour given for the street test in 2020, only one person – Josh Ward – had made the requisite passing score. Sam Witt Declaration, Ex. B; Carleton Rowland Declaration, Ex. A; Josh Ward Declaration, Ex. C; Jason Rice Declaration, Ex. D. Because there were three open positions to fill, Deputy Chief Witt allowed Ward to decide whether or not all the other test takers, including Fry, could have thirty additional minutes to attempt to complete the test and reach a passing score. Sam Witt Declaration, Ex. B; Carleton Rowland Declaration, Ex. A; Josh Ward Declaration, Ex. C. Ward indicated that he did not care if the others were allowed this additional time. *Id.* Subsequently, all other test takers were allowed the option to use the additional time to

4

> reach a passing score. *Id*.; Jason Rice Declaration, Ex. D. After the 30 additional minutes, the street tests were rescored, and Crawford and Rice passed. *Id.*
> As all except Fry have affirmed, all the test takers, including Fry, were given the same option to have extra time on the street test. *Id.* And all evidence, including Fry's test, shows that he also accepted the offer and utilized the extra time. *Id.;* Fry 2020 Street Test, Doc. No. 54-5. The only contradictory evidence would be Fry's previous self-serving affidavit. But this Court has already found that Fry's affidavit was replete with proven falsehoods, and, therefore, could not be given the benefit of the doubt that other portions of his affidavit might be true. Doc. No. 71 at pp.4-7. In short, this Court rejected the affidavit under the "sham affidavit" doctrine. *Id.*

[Brief at 6].

In his brief, plaintiff fails to factually confront the specific assertions set forth in *any* of the declarations submitted by defendant, nor does he attempt to explain why the City's characterization of its evidence is unworthy of credence. To be clear, the four declarations submitted by the City in support of its renewed summary judgment motion are *the* new evidence which it has offered in support of those motions, and plaintiff's failure to even *mention* those declarations in his brief, much less attempt to discredit them, is inexcusable. While plaintiff apparently did not consider it worthy of his time to discuss these declarations, this court notes that all four of the declarants agreed that each of the candidates, plaintiff included, had been offered a second round of testing after an insufficient number of candidates passed the first round. [Defendant's exhibits A to D]. Witt indicated that, after the new round of testing, the tests were re-graded, [exhibit B at 2], which causes this court to wonder whether this re-grading process explains the markings upon which plaintiff so heavily relies. It seems unlikely that the answer to this question will ever be definitively known, since plaintiff did not bother to depose Witt or any other city employee during the renewed discovery process. This court notes that evidence such as the test markings virtually cries out for depositions to be conducted, since this is the only discovery tool which would have allowed counsel to point out the markings to the deponent, (alleged) alteration by alteration, and have him offer an explanation for them.

Moreover, while plaintiff does submit five exhibits in support of his response, these exhibits either constitute his own self-serving and discredited testimony or the same sort of testing documents which this court addressed in its prior order. This court notes that, at no point in his renewed briefing does plaintiff attempt to "walk it through" these documents in order to explain how they add up to any sort of coherent claim of racial discrimination. To the contrary, plaintiff simply repeats the exact same description of the alterations to the tests which he offered in his initial briefing. In his "new" briefing, for example, plaintiff writes that:

> On page one (1) of Rice's test, the grader indicated that Rice had eleven (11) incorrect responses; on page two (2), the grader initially indicated that Rice had sixty-one (61) incorrect responses. However, the grader crossed sixty-one (61) out and placed eighteen (18) incorrect responses. This was done without explanation. Likewise on page three (3), the grader initially indicated that Rice missed sixty-two (62) questions. Yet later on, the grader changed it to show Rice only missed seventeen (17) questions. And again, there was no explanation for said change of scores.
> Similarly, Crawford's test results were treated exactly like the treatment received by Rice.17 Crawford's test shows that he missed a total of one hundred and seventy-eight (178) questions or failures to identify 178 streets. Yet, the grader crossed 178 out and placed ten (10) indicating that he only missed ten (10) streets.

[Second Brief at 3-4].

In his original briefing, plaintiff wrote that:

> On page one (1), the grader indicated that Jason Rice had eleven (11) incorrect responses; on page DEF-00249, the grader initially indicated that Rice had sixty one (61) incorrect responses. However, the grader or someone crossed sixty-one out and placed eighteen (18) incorrect responses. This was done without explanation. Likewise on DEF—00250, the grader or someone initially indicated that Jason Rice had missed sixty two (62) questions. Yet later on, the grader or someone changed it to show that Jason Rice had only missed seventeen (17) questions. And again, there was no explanation for said change of scores.
> Similarly, Austin Crawford, a Caucasian male was promoted over Plaintiff, Willie Fry. Yet, Austin Crawford's test results were treated exactly like the treatment received by Jason Rice. Austin Crawford's DEF—00260 shows that he missed a total of 178 questions or failures to identify 178 streets. Yet, the grader or someone crossed 178 out and placed ten (10) indicating that he only missed ten (10) streets.

[Original brief at 3-4].

6

Clearly, these are the same arguments, based on the same proof, which plaintiff submitted in his first brief, with only an occasional word altered, apparently to give the impression of some new analysis and effort being offered. This court ordered additional discovery based on its conclusion that the markings on the tests in question warranted further explanation based upon *new* evidence. Plaintiff instead offers the same sort of unclear proof and conclusory arguments which this court already found insufficient in its September order. To reiterate, this court does regard the alterations to the tests as worthy of explanation, but defendant is the only one which has offered new evidence in this regard. Once again, at no point in plaintiff's briefing does he address the specific evidence submitted by defendant in this regard, nor did he lift a finger during discovery to depose the individuals who are in a position to explain the alterations. Instead, plaintiff relies once again on his self-serving affidavit and deposition testimony, even after this court specifically found that his first affidavit included demonstrable falsehoods which rendered it a "sham." In so concluding, this court was, quite obviously, finding that plaintiff's own credibility had been heavily impeached, which renders his new affidavit of little, if any, evidentiary value in this court's eyes.

In its reply brief, defendant notes that the additional discovery period provided additional bases to doubt plaintiff's credibility, writing that:

> A telling example is Fry's repeated unsupported assertions that Crawford and Rice were allowed to "retake" the 2020 street test and that this was done "without explanation." Doc. No. 92 at pp.3-4, 6. This is clearly not true. As explained in the opening brief, after this Court's prior order, Fry made no attempt to conduct any discovery. *See* generally docket. But, given this Court's order, the City obtained the evidence and put it in the record. There is no genuine dispute regarding what happened: after only one person, Josh Ward, passed the street test, everyone, including Fry, was given an additional thirty minutes to attempt to complete the test and make a better score. *See* Doc. Nos. 86-1, 86-2, 86-3, and 86-4. Fry does not dispute that he was given this additional time, an argument he has now abandoned after being confronted with the evidence.
> And his own test shows that he was given this opportunity. On page 1 of the test, there are two different scores, labeled first attempt and second attempt. Doc. No. 54-5. On Map

7

> 4, Page 1, there are different scores, with some scribbled out at the bottom. *Id.* at Page ID 174. The same is true on the next two pages. *Id.* at Page ID 175-176. Ultimately, Fry missed 99 fewer streets on his second attempt, but his score was still not high enough to pass and was not as high as Crawford's and Rice's scores. *Id.* at Page ID 169.
> Nor does Fry grapple with the fact that, taking his best score noted on the street test, he still missed more than Crawford's and Rice's worse score and was far from a passing score. Compare Doc. No. 54-5 with Doc. Nos. 54-7, & 54-8.

[Reply brief at 2-3]. This court agrees that plaintiff has shown a repeated pattern of making allegations which are later proven false, at which point he generally abandons his earlier contention. In ordering the additional discovery period, this court gave plaintiff an opportunity to demonstrate improvement in this regard, instead he simply continued the same highly suspect litigation practices noted in its first order.

In light of the foregoing, this court concludes that plaintiff has completely squandered the additional opportunity he was given to offer actual proof in support of his claims, and this constitutes an additional ground for summary judgment, quite apart from this court's evaluation of the current state of the evidence. In so stating, this court notes that plaintiffs are not entitled to be *given* an opportunity to present their proof and arguments before a jury, when they repeatedly fail to use the discovery tools which are made available to them. This court further notes that the manner in which plaintiff failed to engage in supplemental discovery after two federal judges had already found him to be delinquent during the original discovery process, demonstrates disrespect for the litigation process as a whole. This evident disrespect makes this court even less inclined to grant plaintiff any further chances to prove his claims, and defendant's motion for summary judgment is therefore due to be granted.

It is therefore ordered that defendant's motion for summary judgment is granted.

    This, the 12th day of January, 2024.


                                          <u>/s/ Michael P. Mills</u>
                                          U.S. DISTRICT COURT
                                          NORTHERN DISTRICT OF MISSISSIPPI